HOLLINGSWORTH v. NORTH AMERICAN DEPOSIT CO. et al.

*Simmons, C. J.*—It appearing from the facts alleged that there was equity in the plaintiff's petition as to all the defendants, including the one who filed a demurrer thereto, it was error to sustain that demurrer and to dismiss the petition as to that defendant. As there could be no proper determination of the application for injunction without having him before the court, direction is given that the order sustaining the demurrer be set aside and that the application for injunction be then heard upon its merits.    *Judgment reversed, with direction.*

December 21, 1895.

Equitable petition. Before Judge Lumpkin. Fulton superior court. March term, 1895.

Hollingsworth filed his petition for injunction, etc., against the North American Investment & Deposit Company, A. B. Clampet, and J. M. Graden. Graden was personally served. Service was made on Clampet by serving his "alleged attorney." It was alleged that the investment and deposit company and Clampet were non-residents of Georgia. At the hearing defendant's counsel admitted that he had waived service by publication as to Clampet, and would make no point upon any lack of such service. Neither the investment and deposit company nor Graden appeared or pleaded or answered. The investment and deposit company was regularly served by publication, the order for such service reciting that it was a foreign corporation and had no agent resident in Georgia on whom service could be perfected. Upon the hearing the court refused the injunction prayed for, and sustained a demurrer of Clampet and dismissed the action as to him.

The petition alleged: On May 6, 1892, the North American Investment & Deposit Company, through its agent C. W. Comstock, solicited petitioner to borrow money from it and secure the notes given for the loan by a mortgage deed to land owned by petitioner, lying in Clayton county (describing it), and then and now well worth $3,000. Comstock, as agent of said company and duly

authorized to contract for it, and to negotiate loans and to secure the same in the manner above mentioned, on said day and at divers other times importuned petitioner to accept a loan from said company and secure it with said land, setting forth in the most glowing colors the many advantages to be derived in borrowing from his company. Petitioner listened gladly to Comstock's eloquence, and being poor and in great need of money, finally yielded to his influence and agreed to negotiate a loan. Comstock represented that his company was then and there perfectly solvent, with millions at its back. Petitioner had no reason to doubt the truthfulness of the representations then made by Comstock as such agent, and was wholly unfamiliar with the tricks of the trade. He accordingly executed and delivered to said company his note for $1,000, dated May 6, 1892, due May 6, 1897, and payable to said company, and ten other promissory notes, each for $35, being for interest due semiannually on said principal note. On said notes $90 of interest is already due. Copies of all the notes are attached. To secure said notes he executed and delivered to defendant a deed or equitable mortgage to the land, and said company then and there executed its bond for titles to the land to him. He expected the money at once, and so stated to said company, its agents, etc., but said agent then and there represented to him that the $1,000 would be sent in a few days and that he need give himself no concern; and he believed such would be the case. He had no suspicion of the fraud which was then being practiced by said company and its agent on him, though he thought the transaction somewhat unbusinesslike and demurred to the same, but was persuaded by said agent that it would be all right. Some time passed, and he began to have his suspicions aroused. He called on said agent and the company and inquired about the matter, and was again put off. Months passed, and with one pretense and another the

company delayed the payment. His own creditors were pressing him, and the very object he had in view in negotiating the loan was about to be defeated. He again importuned said agent and the company either to return his deed and notes or to pay the money, but they continued to excite hopes only to be blighted. Finally Clampet came to Atlanta as the agent of said company and to solicit loans for it. He was then and still is an agent of defendant and an officer and stockholder in the same, and active in promoting the business of said company. He saw petitioner, and after expressing regret at the disappointment, assured him that there was a little hitch in the matter and that it would be all right in a few days. Clampet drew glowing pictures of the wealth of his corporation and the good it was accomplishing to the poor, etc., and assured him that the best thing for him to do was to take stock in the company purely as an investment. Warned by his past experience, he declined to take stock. Still the money did not come, and the company refused to return the notes or deed and failed to pay over the money. Petitioner finally sought counsel and threatened to sue and prosecute. At last the company sent him $302.50, leaving a balance of $697.50, besides interest, which is still due. Petitioner often sought to get defendant to pay the balance or return the deed and notes. Failing in this and pressed by the very claims which he expected to pay from the money borrowed, he was forced to make a sacrifice of the land, and accordingly on October 29, 1892, for a consideration paid, he transferred the bond for titles to one Kile, who afterwards transferred it to Graden of Fulton county, Ga., who now is in possession of the land and holds it under the bond for titles, claiming to be a *bona fide* purchaser without notice of petitioner's equity. He holds the land subject to the mortgage title by petitioner. Said company sometimes pretends that it knows nothing about the notes and that the same have been transferred to

Clampet as well as the deed; at other times it says that the money will be paid. Petitioner alleges that the company is and always has been insolvent; that Clampet is insolvent; that the whole scheme was and is a fraud; that the plan was to get the deed and sell the land to some *bona fide* purchaser without notice and before the maturity of the note; that the company and Clampet, as its agent and officer, actively aided in the perpetration of this fraud; that none of said parties ever intended to pay the money, and now hold back the money and the notes and deed in fraud of petitioner's rights; that its agents and officers, and especially Clampet and Comstock, knew all the time that the company was insolvent, and that the representations as to its solvency were false and fraudulent; that they and the company were perpetrating the most wicked fraud on petitioner; and that each and all of the representations were made to induce petitioner to execute the notes and deed and mortgage, and with the view of accomplishing the fraud. The company now publishes that it is out of business, that it has no money to lend, and that it has no agents or officers; in short, "that it is a lingering halo around decay." It pretends that the deed and mortgage were transferred to Clampet, and that it has nothing to do with petitioner or said papers. Clampet now says that he bought the notes and mortgage before maturity and without notice of petitioner's equity; but Clampet had full notice and actively aided in the perpetration of the fraud. The plan of Clampet and the company is to collect the rent already due and the balance of the notes, and divide the spoils. Clampet is now actively engaged in collecting the notes, and threatens to bring suit on them and to settle them with Graden and make Graden a deed to the land. Said company and Graden threaten to sell the notes and deeds to a *bona fide* purchaser without notice, and thus defeat petitioner's rights. Graden threatens to pay off the notes and take a deed to the land; in which event petitioner would be

utterly remediless.   Graden (?) threatens to sue on the notes for interest already due, and to collect the same out of Graden by proceeding against the land; is now taking steps to do so, and will do so unless restrained.   The company is winking at all this fraud and encouraging it, knowing that it will reap part of the spoils.   The prayer is, for injunction restraining Clampet from collecting the interest due on the notes, or transferring the deed and notes or any of them, or disposing of the same, and that the same be brought into court and impounded to await further order, or that the same be cancelled unless Clampet or said company shall pay petitioner the balance due on the loan with interest; that Clampet and the company be decreed to pay said balance; that on the payment of the notes by Graden to Clampet or the company, enough of the money be appropriated to pay off the balance due petitioner, and then Clampet or the company, whichever holds the deed, be decreed to make a deed to Graden; that if this cannot be done, then that Graden be decreed to pay petitioner the balance due on the amount borrowed, with interest, to go as a credit on said amount to be paid before he gets title to the land, and the balance be paid over to Clampet for the company; that the company be restrained from transferring or collecting the note or from foreclosing the mortgage; and that the company, if in possession of the deed and notes, be required to bring the same into court to be disposed of as directed; that Graden be restrained from paying any of the notes and taking a deed to the land until further order, and be restrained from paying the interest now due or to become due; that Clampet and the company be restrained from making any deed to the land to Graden until further order; and that Graden be restrained from paying anything to any holder of said mortgage title made by petitioner until further order; for general relief, etc.

Clampet demurred on the following grounds: (1) Want of jurisdiction.   (2) It appears in the petition that the

premises are located in Clayton county, that Graden resides in Clayton county, that this defendant resides in Illinois, and that the investment and deposit company is a corporation of the State of Iowa, and not doing business, at the time of filing said suit, in the State of Georgia.   (3) It appears upon the face of the petition that plaintiff has parted with all of his right, title and interest in and to the property in controversy, and that in the event the property is sufficient to discharge said debt he has no longer any interest in the amount or payment thereof; and it appears by the petition that the property is sufficient to pay said debt.   (4) No cause of action against this defendant is stated.   (5) Misjoinder of causes of action, to wit: an alleged cause of action in tort against the investment and deposit company, a separate action in tort against this defendant, and an application for injunction restraining the enforcement of the deed against certain land in which petitioner by his own showing has no interest.

*P. F. Smith* and *W. B. Farley*, for plaintiff.
*King & Spalding*, for defendants.